# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF TENNESSEE
# NASHVILLE DIVISION

| ODAI GHUNIM, | ) |  |
|---|---|---|
| Plaintiff, | ) |  |
| v. | ) | Case No. 3:19-cv-00671 |
| VICTORIA CUNNINGHAM, | ) | Judge Aleta A. Trauger |
| Defendant. | ) |  |

## MEMORANDUM

Before the court is defendant Victoria Cunningham's Motion to Dismiss all claims brought against her by plaintiff Odai Ghunim. (Doc. No. 10.) For the reasons set forth herein the motion will be granted, and this case will be dismissed with prejudice.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Ghunim alleges in his Complaint that, on the night of March 13, 2017, he was working as general manager at a Shell gas station-convenience store located on Murfreesboro Pike in Nashville. Around 9:00 p.m., a customer named Tobias Ragland, whom the plaintiff knew had previously been banned from the store for cause, entered the store to buy cigarettes. Ghunim chose to wait on Ragland rather than making a scene. He gave Ragland the requested pack of cigarettes, took his money, and then placed Ragland's change on the counter mat rather than in Ragland's hand. (Compl., Doc. No. 1 ¶¶ 6–7.)

Ragland was angered by Ghunim's placing the change on the mat. He became verbally abusive, threw the counter mat at Ghunim, and spit in his face. (*Id.* ¶ 8.) Ghunim checked to make sure that his 40-caliber pistol was at his side, but he did not draw the weapon. Instead he picked up a toy foam bat and tried to get Ragland to leave the store. Instead of leaving, Ragland proceeded

to knock the cash register and displays off the counter. (*Id.* ¶ 9.) Ghunim asked him to leave the store, but Ragland grabbed him, bent him over an ice cream cooler, and managed to take possession of Ghunim's pistol. (*Id.* ¶¶ 10–12.)

At this point, another clerk working at the store came to Ghunim's aid, and the two of them wrestled the pistol from Ragland. Ragland then began to attack with the foam bat that he had by then taken from Ghunim. Ghunim, again in possession of his pistol and desperate to end the confrontation, shot a round down and into the floor, which caused Ragland to run out the door, still yelling at Ghunim. Ghunim stepped out of the store and fired a second round, this time, he alleges, into the air, to ensure that Ragland did not return. (*Id.* ¶¶ 13–14.)

Ghunim attempted to call the police but his call did not go through. Ragland, however, had no such difficulty. As a result of Ragland's call, defendant Victoria Cunningham, a police officer employed by the Metropolitan Nashville Police Department, arrived on the scene. She first interviewed Ragland. (*Id.* ¶ 15.) She then entered the store and interviewed Ghunim. Although he was cooperative, Cunningham told Ghunim to "shut up" when he tried to relay his version of events. (*Id.* ¶ 16.) She also refused to watch the "entire" security video of the episode. (*Id.*)

Cunningham prepared an affidavit in support of her request for an arrest warrant for the plaintiff. She swore in her affidavit that the physical altercation between Ragland and Ghunim caused "the victim," *i.e.*, Ragland, to push the cash register off the counter, which Ghunim alleges was "blatantly untrue," as she would have known if she had watched the surveillance video. (*Id.* ¶ 17.) She also referred to Ragland as the "victim" and left out important details, such as that Ragland initiated the confrontation by spitting in Ghunim's face and attempting to destroy the store. (*Id.* ¶¶ 17–18.)

While attempting to clean up after Ragland's rampage, Ghunim's fellow clerk picked up the spent shell casings that had been ejected from Ghunim's gun. He gave them to Ghunim, who put them in his pocket. Although Ghunim admitted to Cunningham that he had fired his gun twice, Cunningham did not ask him about the shell casings. She later charged him with tampering with evidence. She also initially charged him with vandalism as well, but this charge was dismissed prior to trial. (*Id.* ¶¶ 19–20.)

The plaintiff asserts that, based on false statements or intentional omissions, Cunningham "effected a false and unlawful arrest," requiring the plaintiff to make bond to guarantee his subsequent appearance at trial. He also alleges "upon information and belief" that Cunningham testified falsely before the Grand Jury for Davidson County, Tennessee in order to procure his indictment on charges of aggravated assault and tampering with evidence and that she testified falsely at trial. The Complaint does not clearly identify how Cunningham's testimony was false, other than by asserting that Cunningham falsely testified that the plaintiff had covered up a bullet hole in the store glass window to conceal where the bullet had ricocheted off the floor from the first shot, which, the plaintiff claims, a viewing of the security video shows is not true. (*Id.* ¶¶ 21–23.) Construing the Complaint broadly in favor of the plaintiff, the court understands the plaintiff also to be alleging that Cunningham's false testimony was consistent with the false statements in her warrant affidavit.

The plaintiff also finds it suspicious that Ragland was never charged with any crime, despite the fact that he had previously been banned from the store and that he was the person who "first posed a threat with the gun, who also testified falsely at Plaintiff's criminal trial, along with Cunningham." (*Id.* ¶ 24.) The plaintiff speculates as to his belief that some prior relationship

existed between Ragland and Cunningham. (*Id.*) Ghunim asserts that he was acting in self-defense in firing at Ragland. (*Id.* ¶ 25.)

The plaintiff spent five days in jail following his arrest, was on appearance bond for seventeen months pending trial, and finally was acquitted of all charges after a trial on August 6 and 7, 2018. (*Id.* ¶ 25.)

The plaintiff filed suit on August 5, 2019, asserting claims against Cunningham for malicious prosecution and intentional or negligent infliction of emotional distress.

The defendant filed her Motion to Dismiss and supporting Memorandum on September 4, 2019. (Doc. Nos. 10, 11.) The plaintiff filed a Response (Doc. No. 15), and the plaintiff filed a Reply (Doc. No. 17). Along with the Reply, the defendant submitted a DVD with two security videos of the event giving rise to the Complaint, showing the altercation from two different perspectives.

The first of these, "Channel 4," does not show the inception of the altercation, as the camera was pointed toward the store's exit. It captures the struggle from the middle, showing the plaintiff whacking Ragland repeatedly with the foam bat until Ragland tackled him against the ice cream freezer and attempted to gain control of the pistol. The video shows the plaintiff regaining control of the pistol and firing it toward Ragland, but it does not clearly show that the plaintiff's first shot was aimed down toward the floor. In addition, the video confirms that the plaintiff walked out of the store and fired the second shot after Ragland had left the scene. The video does not necessarily substantiate Ghunim's claim that he shot "into the air" (Doc. No. 1 ¶ 14) , as he claims. Instead, a reasonable person viewing the video might conclude that he shot straight ahead, toward the retreating Ragland.

"Channel 5" of the DVD, from a different camera, catches the inception of the altercation. It clearly shows the men having words across the store counter, but it also shows that the plaintiff appears to be the first to escalate the dispute by bringing out the bat and swinging it toward Ragland while they were still separated by the store counter.

**II.     STANDARD OF REVIEW**

For purposes of a motion to dismiss under Rule 12(b)(6), the court must take all of the factual allegations in the complaint as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007) To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. *Iqbal*, 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. *Id.* When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. *Id.* at 679. A legal conclusion, including one couched as a factual allegation, need not be accepted as true on a motion to dismiss, nor are mere recitations of the elements of a cause of action sufficient. *Id.* at 678; *Fritz v. Charter Twp. of Comstock*, 592 F.3d 718, 722 (6th Cir. 2010).

The *Iqbal* Court suggested that a district court considering a motion to dismiss "can choose to begin" its analysis "by identifying pleadings that . . . are not entitled to the assumption of truth." *Id.* at 679. As indicated above, pleadings that do not constitute factual allegations, including "bare assertions," a formulaic recitation of the elements, and "conclusory" or "bald" allegations, need not be accepted as true. *Id.* at 681. The question is whether the remaining factual allegations plausibly suggest an entitlement to relief. *Id.* If not, the pleading fails to meet the standard of Fed. R. Civ. P. 8 and must be dismissed pursuant to Rule 12(b)(6). *Id.* at 683.

As a general rule, matters outside the pleadings may not be considered in ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), unless the motion is converted to one for summary judgment under Rule 56. Fed. R. Civ. P. 12(d). However, documents attached to the pleadings become part of the pleadings and may be considered on a motion to dismiss. Fed. R. Civ. P. 10(c). In addition, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Commercial Money Ctr., Inc. v. Illinois Union Ins. Co.*, 508 F.3d 327, 335–36 (6th Cir. 2007); *Jackson v. City of Columbus*, 194 F.3d 737, 745 (6th Cir. 1999).

### III. DISCUSSION

#### A. Intentional or Negligent Infliction of Emotional Distress

As an initial matter, the plaintiff makes no effort to defend against the dismissal of his state law claim for intentional or negligent infliction of emotional distress. Because it is clear that that claim is barred by Tennessee's one-year statute of limitations, Tenn. Code Ann. § 28-3-104(a)(1)(A), this claim will be dismissed with prejudice.

#### B. Malicious Prosecution Claim[1]

In her Motion to Dismiss, the defendant argues that (1) she had probable cause to arrest the plaintiff for aggravated assault, even under the plaintiff's version of events; (2) the alleged falsehoods and material omissions for the most part concern Ragland's behavior and, regardless, are not material to the probable cause finding; (3) even if probable cause were lacking, Cunningham is entitled to qualified immunity; and (4) Cunningham had probable cause to charge the plaintiff with tampering with evidence, and, in any event, the plaintiff does not allege that this

---

[1] The plaintiff does not assert a claim for false or unlawful arrest under 42 U.S.C. § 1983, apparently recognizing that such a claim, which accrues as of the date of arrest, would also be barred by Tennessee's one-year statute of limitations, Tenn. Code Ann. § 104(a)(1)(B).

second charge caused a quantifiable loss of liberty. (Doc. No. 11.) Cunningham also argues that, to the extent the plaintiff's claims are premised upon her testimony before the grand jury or at trial, she is entitled to absolute immunity. *See Rehberg v. Paulk*, 566 U.S. 356, 369 (2012); *Briscoe v. LaHue*, 460 U.S. 325, 330–31 (1983).

In his Response, the plaintiff argues that Cunningham is not entitled to qualified immunity, because: (1) her "selective investigation," characterization of Ragland as the victim, and her "selective testimony" established a "prior relationship with Ragland" that amounted to "a violation of Plaintiff's right to equal protection of the law" (Doc. No. 15, at 1–2); (2) Cunningham's testimony was the only evidence on which the plaintiff's indictment was based; and (3) Cunningham failed to take into account the totality of the circumstances when she made the arrest, including "material evidence which was in plain view while she was on the scene, *i.e.*, the remainder of the closed-circuit footage" (*id.* at 3), "the violent act[s] of Ragland" toward the plaintiff (*id.* at 4), the fact that Ragland had been banned from the store, and the fact that Ragland had "wrestled" the firearm from the plaintiff and "threatened *him* with it" (*id.* at 5).

Most of these arguments are simply beside the point. There is no evidence other than the plaintiff's speculation of a "prior relationship" between Ragland and Cunningham. Even if there were, the "[s]ubjective intent of the arresting officer, however it is determined . . . , is simply no basis for invalidating an arrest. Those are lawfully arrested whom the facts known to the arresting officers give probable cause to arrest." *Devenpeck v. Alford*, 543 U.S. 146, 154–55 (2004). And, as the defendant argues, the fact that there may have been probable cause to charge Ragland with assault does not obviate the factual basis for the charges against the plaintiff. Regarding the plaintiff's assertion that Cunningham's selective investigation and selective testimony constitute a violation of "equal protection," the plaintiff here has not asserted a claim based on selective

prosecution or violation of his right to equal protection, nor has he alleged facts that would support such a claim. *See Gardenhire v. Schubert*, 205 F.3d 303, 319–20 (6th Cir. 2000) (discussing equal protection claim based on selective enforcement). The only relevant argument raised by the plaintiff is based on his claim that Cunningham failed to take into consideration the totality of the circumstances in charging the plaintiff with aggravated assault.

With respect to that argument, in her Reply, Cunningham contends that (1) Ragland's behavior does not negate the probable cause that existed to support the charges against the plaintiff; (2) Cunningham had no obligation to watch the entirety of the security video since the plaintiff's admissions provided probable cause to charge the plaintiff with aggravated assault; and (3) the security videos do not dispel probable cause or irrefutably establish that the plaintiff acted in self-defense, particularly with respect to the firing of the second shot, when the plaintiff followed Ragland into the parking lot and fired at him after Ragland had already left the store.

1. *The Security Videos*

Ordinarily, "[m]atters outside the pleadings are not to be considered by a court in ruling on a 12(b)(6) motion to dismiss." *Weiner v. Klais & Co.*, 108 F.3d 86, 88 (6th Cir. 1997). As indicated above, however, when a document is referred to in the pleadings and is integral to the claims, it may be considered without converting a motion to dismiss into one for summary judgment. *Commercial Money Ctr.*, 508 F.3d 327, 335–36 (6th Cir. 2007).

The Sixth Circuit has condoned the consideration of a video showing a disputed event in the context of a ruling on a 12(b)(6) motion. *See, e.g.*, *Bailey v. City of Ann Arbor*, 860 F.3d 382, 386 (6th Cir. 2017). In that case, the court concluded that, even at the motion to dismiss stage, the video constituted "verifiable facts" that contradicted the plaintiff's central allegations, making them implausible. "That's why our sister courts have considered videos when granting motions to

dismiss. And that's why we do so here." *Id.* at 387 (internal citations collecting cases omitted); *see also Osberry v. Slusher*, 750 F. App'x 385, 390 (6th Cir. 2019) ("[W]e have allowed the use of a video when deciding a Rule 12 motion if the video 'utterly discredits' the plaintiff's version of events." (citing *Bailey*¸ 860 F.3d at 386–87)).

In this case, the court concludes that, because the security video is repeatedly referenced in the Complaint and relied upon by the plaintiff, even though it was submitted by the defendant, the court may consider it without converting the motion into one for summary judgment. *Accord Eggleston v. Daniels*, No. 15-11893, 2016 WL 4363013, at *4 n.4 (E.D. Mich. Aug. 16, 2016) (considering a video submitted by the defendant on a motion to dismiss "because it is clearly central to Plaintiff's claims and referenced throughout her First Amended Complaint")

### 2. *Legal Standards*

To state a valid federal civil rights claim for malicious prosecution in violation of the Fourth Amendment, a plaintiff must allege facts showing that:

> (1) a criminal prosecution was initiated against the plaintiff[,] and the defendant made, influenced, or participated in the decision to prosecute; (2) there was no probable cause for the criminal prosecution; (3) as a consequence of the legal proceeding, the plaintiff suffered a deprivation of liberty apart from the initial seizure; and (4) the criminal proceeding was resolved in the plaintiff's favor.

*Johnson v. Moseley*, 790 F.3d 649, 654 (6th Cir. 2015) (quoting *Robertson v. Lucas*, 753 F.3d 606, 615 (6th Cir. 2014)).

This claim also implicates qualified immunity. Qualified immunity, if it applies, is a defense not just against liability, but against suit itself. *Pearson v. Callahan*, 555 U.S. 223, 231 (2009). Qualified immunity applies unless "the contours of the asserted right were sufficiently clear that every reasonable official would have understood that what he was doing violated that right." *Johnson*, 790 F.3d at 653 (citation omitted). The plaintiff bears the burden of showing that

the defendant is *not* entitled to qualified immunity. *Johnson*, 790 F.3d at 653. To carry that burden at the pleadings stage, the plaintiff must allege in the Complaint "facts plausibly making out a claim that the defendant's conduct violated a constitutional right that was clearly established at the time, such that a reasonable officer would have known that [her] conduct violated that right." *Id.* (citation omitted). "Plaintiff is thus obliged to plead *facts* that, viewed in the light most favorable to him, make out a violation of a constitutional right so clearly established in a particularized sense that a reasonable officer confronted with the same situation would have known that his conduct violated that right." *Id.* at 653. It is error for a district court to define the relevant constitutional right in a "generalized sense," such as the right to be free from malicious prosecution. *Id.* at 654. Rather, the court must consider whether the factual allegations show a violation of that right in a particularized sense. *Id.*

The Sixth Circuit has cautioned that "it is generally inappropriate for a district court to grant a 12(b)(6) motion to dismiss on the basis of qualified immunity." *Courtright v. City of Battle Creek*, 839 F.3d 513, 518 (6th Cir. 2016) (internal citation and quotation marks omitted). Instead, "[a]lthough an officer's entitlement to qualified immunity is a threshold question to be resolved at the earliest possible point, that point is usually summary judgment and not dismissal under Rule 12." *Id.* (quoting *Wesley v. Campbell*, 779 F.3d 421, 433–34 (6th Cir. 2015)). This is especially true where "the fact-intensive nature of the applicable tests make it 'difficult for a defendant to claim qualified immunity on the pleadings *before discovery*.'" *Wesley*, 779 F.3d at 434 (quoting *Evans-Marshall v. Bd. of Educ.*, 428 F.3d 223, 235 (6th Cir. 2005) (Sutton, J., concurring)). "[D]ismissal nevertheless is appropriate when the defendant is entitled to a meritorious affirmative defense such as qualified immunity." *Peatross v. City of Memphis*, 818 F.3d 233, 240 (6th Cir.

2016) (citation omitted); *see also Gavitt v. Born*, 835 F. 3d 623, 649 (6th Cir. 2016) (affirming the dismissal of § 1983 claims on qualified immunity grounds).

        3.       *Probable Cause*

There is no dispute that the plaintiff has adequately alleged facts supporting most of the elements of a malicious prosecution claim. Ghunim was arrested and prosecuted on charges of aggravated assault and tampering with evidence; as a consequence of the legal proceeding, he spent five days in jail and more than a year under an appearance bond, thus showing that he suffered a deprivation of his liberty apart from the initial arrest; and the criminal proceeding was resolved in his favor when he was acquitted on all charges. The defendant argues only that Ghunim has not adequately alleged facts that, if true, would show that there was no probable cause for the criminal prosecution.

At whatever stage it is assessed, probable cause exists "when the police have 'reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense.'" *Gardenhire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000) (quoting *Beck v. Ohio*, 379 U.S. 89, 91 (1964)). Probable cause is a "fluid concept" that "depends on the totality of circumstances" and "requires only a probability or substantial chance of criminal activity, not an actual showing of such activity." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 586 (2018). Generally, a police officer has probable cause "when he discovers reasonably reliable information that the suspect has committed a crime. And, in obtaining such reliable information, an officer cannot look only at the evidence of guilt while ignoring all exculpatory evidence. Rather, the officer must consider the totality of the circumstances, recognizing both the inculpatory and exculpatory evidence, before determining if he has probable cause to make an arrest." *Gardenhire*, 205 F.3d 3at 318 (internal citation omitted).

Regarding probable cause, the defendant asserts, somewhat imprecisely, that "[a] malicious prosecution claim cannot be sustained if there was probable cause at the time of arrest." (Doc. No. 11, at 6.) While it is true that a *false arrest* claim cannot be sustained if there was probable cause at the time of arrest, the Sixth Circuit has expressly recognized that the "'tort of malicious prosecution' is 'entirely distinct' from that of false arrest, as the malicious-prosecution tort 'remedies detention accompanied not by absence of legal process, but by wrongful institution of legal process.'" *Sykes v. Anderson*, 625 F.3d 294, 305, 308 (6th Cir. 2010) (quoting *Wallace v. Kato*, 549 U.S. 384, 390 (2007)). Thus, "[i]n order to distinguish appropriately this claim [malicious prosecution] from one of false arrest, [the court] must consider not only whether the Defendants had probable cause to arrest the Plaintiffs but also whether probable cause existed to initiate the criminal proceeding against the Plaintiffs." *Id.* at 310–11 (citations omitted).

In other words, probable cause to arrest at the time of the arrest does not necessarily defeat a malicious prosecution claim. What matters for purposes of a malicious prosecution claim is whether there was probable cause to *prosecute* and whether the defendant influenced that decision. *See e.g., Fox v. DeSoto*, 489 F.3d 227, 237 (6th Cir. 2007) ("What is certain . . . is that [a malicious prosecution] claim fails when there was probable cause to prosecute, or when the defendant did not make, influence, or participate in the decision to prosecute."); *see also Johnson*, 790 F.3d at 654 (accepting that "probable cause to arrest and initiate prosecution" existed, but proceeding to consider the question of whether the defendants had "influenced or participated" in the prosecutor's decision to continue the prosecution, after they "had knowledge of facts that would have led any reasonable officer to conclude that probable cause had ceased to exist and that continuing the prosecution would be in violation of plaintiff's clearly established constitutional rights"). Here, as in *Johnson*, "[w]hat remains in question is whether plaintiff has alleged facts

giving rise to a reasonable inference that . . . the defendant[] 'influenced or participated' in the prosecutor's decision to continue the prosecution after he or she had knowledge of facts that would have led any reasonable officer to conclude that probable cause had ceased to exist and that continuing the prosecution would be in violation of plaintiff's clearly established constitutional rights." 790 F.3d at 654.

Specifically regarding probable cause for the aggravated assault charge, Tennessee law defines the crime of simple assault to include "[i]ntentionally or knowingly caus[ing] another to reasonably fear imminent bodily injury." Tenn. Code Ann. § 39-13-101(a)(2). A conviction on a charge of *aggravated* assault under Tennessee law, when the victim does not actually suffer bodily injury, requires proof that the defendant "[i]ntentionally or knowingly commits an assault as defined in § 39-13-101, and the assault . . . [i]nvolved the use or display of a deadly weapon." Tenn. Code Ann. § 39-13-102(a)(1)(A)(iii).

In this case, it is plain from the allegations in the Complaint—even without resort to the videos—that probable cause to effect the initial arrest on charges of aggravated assault existed. Specifically, based on Ghunim's own admissions, it would have appeared to a reasonable officer on the scene that the plaintiff had intentionally caused Ragland to reasonably fear imminent bodily injury by both displaying and using the pistol. Moreover, none of the evidence unearthed following the initial interviews with Ragland and Ghunim—including a viewing of both security videos in their entirety, which the plaintiff faults Cunningham for not doing—would have dispelled that initial conclusion. In fact, as the defendant argues, although the video arguably shows that Ragland was the aggressor and had the upper hand during much of the altercation, it also shows that the plaintiff escalated the stakes by firing the pistol toward Ragland when Ragland was armed with

only a foam bat and by firing at him a second time after Ragland had left the store. (Doc. No. 17, at 5.)

The plaintiff also alleges that Cunningham made false statements in her warrant affidavit and then testified falsely that "the physical altercation caused the victim to push the cash register off the counter," which, the plaintiff asserts, "was a blatantly untrue statement." (Doc. No. 1 ¶ 17.) He also claims that Cunningham's arrest report and, presumably, her testimony omitted important information, including that Ragland had initiated the altercation by spitting in the plaintiff's face and "attempt[ed] to destroy the store." (*Id.* ¶ 18.) He further alleges that she "alleged and testified" untruthfully that the plaintiff had covered up a bullet hole in the store window to try to conceal it. (*Id.* ¶ 23.)

However, none of the omissions or false evidence to which the plaintiff points actually calls into question the truth of those elements that established probable cause to charge him with aggravated assault: the plaintiff admitted to displaying and actually firing the gun into the floor of the store in order to scare away Ragland and to firing again outside the store to try to prevent him from coming back—that is, after he had left and was no longer posing a threat. Generally, alleged falsehoods or omissions must be material to the finding of probable cause. *See Sykes*, 625 F.3d at 312 (to establish that the defendant "made, influenced, or participated in the decision to prosecute," a plaintiff must present evidence that the defendant "(1) stated a deliberate falsehood or showed reckless disregard for the truth and (2) that the allegedly false or omitted information was material to the court's finding of probable cause"). The purported omissions and the alleged falsehoods to which the plaintiff points do not detract from the conclusion that probable cause existed to charge the plaintiff with aggravated assault. In other words, even if Cunningham had included the information she allegedly omitted and omitted the falsehoods she allegedly included, it would not

have affected the fact that Ghunim fired a gun in Ragland's general vicinity twice, the second time as he retreated, which established probable cause for the aggravated assault charge.

Construing the allegations in the Complaint broadly in the light most favorable to the plaintiff, the court understands the plaintiff to be asserting that he acted in self-defense. His argument appears to be either that, if Cunningham had considered all of the evidence in its totality and watched the security videos, she would have concluded that, because Ghunim acted in self-defense, there was no probable cause to charge him with aggravated assault in the first place, or, alternatively, that she should have included the evidence establishing self-defense in her affidavit, arrest report, and grand jury testimony.

The Sixth Circuit has held generally that the government has no duty to provide potentially exculpatory evidence to the grand jury. *Martin v. Maurer*, 581 F. App'x 509, (6th Cir. 2014) (citing *United States v. Angel*, 355 F.3d 462, 475 (6th Cir. 2004)). On the other hand, the Sixth Circuit has also denied summary judgment to police officers on malicious prosecution claims where there was evidence that the defendant police officers made numerous material omissions, false statements, and fabrications of evidence in "laying the groundwork" for the indictment and material "omissions and falsehoods in [the] investigation report that was later submitted to the grand jury" that would have shown that the plaintiff had acted in self-defense. *Stillwagon v. City of Delaware*, 747 F. App'x 361, 372–73. (6th Cir. 2018). In *Stillwagon*, the court confirmed that the "initial probable cause determination must be founded on both the inculpatory and exculpatory evidence known to the arresting officer." *Stillwagon*, 747 F. App'x at 369 (quoting *Logsdon v. Hains*, 492 F.3d 334, 341 (6th Cir. 2007) (internal quotation marks omitted). A police officer "cannot simply turn a blind eye toward potentially exculpatory evidence," and the probable cause

determination requires "an examination of all [the] facts and circumstances within an officer's knowledge at the time of an arrest." *Id.* at 369–70 (internal quotation marks and citations omitted).

The facts of this case are not remotely similar to those of *Stillwagon*. There, the omissions and fabrications in the police officer's reports and affidavits were numerous *and* material, both to probable cause and self defense. Under Tennessee law, self-defense is a "general defense" (rather than an "affirmative defense") that, once fairly raised by a defendant, is decided by the jury, and the prosecution has the burden of proving "beyond a reasonable doubt that the defense does not apply." *State v. Hawkins*, 406 S.W.3d 121, 129 (Tenn. 2013); *see also* Tenn. Code Ann. § 39-11-203. Here, as already stated above, the alleged omissions and fabrications were not material to the issue of probable cause. Moreover, a reasonable police officer considering all of the evidence in its totality could still have reasonably concluded that probable cause existed to support the aggravated assault charge and that whether the plaintiff was acting in self-defense was a question of fact to be resolved by a jury. It bears emphasizing again that the plaintiff admits firing the pistol a second time after Ragland had left the store. Consistent with that admission, the video captures the plaintiff firing the pistol toward Ragland (as opposed to in the air, as the plaintiff maintains) after Ragland had already retreated from the scene and, at least arguably, no longer posed a threat.

To be clear, the court is not resolving any factual disputes created by the video in favor of the defendant. However, because the defendant asserts that she is entitled to qualified immunity, the plaintiff bears the burden of showing that the defendant is *not* entitled to qualified immunity. *Johnson*, 790 F.3d at 653. To carry that burden at the pleadings stage, the plaintiff must allege in the Complaint "facts plausibly making out a claim that the defendant's conduct violated a constitutional right that was clearly established at the time, such that a reasonable officer would have known that [her] conduct violated that right." *Id.* (citation omitted). A reasonable officer,

under the circumstances presented here, would not have felt compelled to resolve the issue of self defense in the plaintiff's favor, particularly where the plaintiff himself admitted that he fired the gun after Ragland had departed the scene and no longer presented an immediate threat. *Accord Fox v. DeSoto*, 489 F.3d 227, 236–37 (6th Cir. 2007) ("The question we must ask is whether, under the totality of the circumstances, the officer's actions were objectively reasonable.").

In sum, the court finds that the facts as alleged by the plaintiff do not establish that probable cause for the criminal prosecution on the aggravated assault charge was lacking at any time. He has not shown that the purported omissions and falsehoods in the defendant's warrant affidavit and testimony were material to the finding of probable cause or that the circumstances necessarily established that he acted in self-defense. Accordingly, Cunningham is entitled to qualified immunity.

As for the plaintiff's arrest and prosecution on the charge of tampering with the evidence, to find a defendant guilty on a charge of tampering with evidence under Tennessee law, a jury must find that "(1) [there was] an ongoing investigation about which the accused knows, (2) the accused alters, destroys, or conceals some 'record, document or thing,' and (3) the accused tampers with the 'record, document or thing' in order to impair its use as evidence in the investigation." *State v. Majors*, 318 S.W.3d 850, 858 (Tenn. 2010) (quoting Tenn. Code Ann. 39-16-503(a)(1)). The plaintiff alleges that, when Cunningham arrived at the scene, the shotgun shells were in his pocket because his co-worker had picked them up and handed them to him. The plaintiff claims that Cunningham charged him with tampering with the evidence without asking him about the spent casings.

As Cunningham argues, once she arrived on the scene, the plaintiff clearly knew that there was an investigation surrounding the circumstances of the shooting, but he did not tell the police

that the shell casings had been moved or that they were in his pocket. Under these circumstances, upon discovering the casings in Ghunim's pocket (presumably during the search incident to his arrest, though neither party makes this clear), Cunningham had probable cause to pursue the prosecution of the plaintiff on the charge of tampering with the evidence. In his Response to the Motion to Dismiss, the plaintiff does not dispute the defendant's argument that there was probable cause to support the charge for tampering with evidence. The court finds that the Complaint fails to state a claim for malicious prosecution based on the tampering charge as well.

## IV.   CONCLUSION

For the reasons set forth herein, the court will grant the Motion to Dismiss. An appropriate Order is filed herewith.

_____
ALETA A. TRAUGER
United States District Judge